14 F.3d 602
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
William FERRELL, IV, Defendant-Appellant.
 No. 93-1658.
 United States Court of Appeals, Sixth Circuit.
 Dec. 21, 1993.
 
 Before: KENNEDY, MARTIN, and SILER, Circuit Judges.
 PER CURIAM.
 
 
 1
 William Ferrell, IV appeals his conviction for conspiracy to possess with intent to distribute cocaine base, aiding and abetting possession with the intent to distribute cocaine base, and use of a firearm in relation to a drug trafficking offense. Ferrell also appeals the district court's denial of his motion for a new trial. For the following reasons, we affirm the district court.
 
 
 2
 Pursuant to an undercover investigation, Detective Robert Smith of the County of Macomb Enforcement Team met with co-defendant Charleston Adams on August 14, 17, and 23 of 1990 to discuss the possibility of purchasing cocaine base. At the latter two meetings, Adams was accompanied by an individual who described himself as a lookout. On the evening of August 29, Smith arranged to purchase two ounces of cocaine base from Adams at the Clinton Gables Bowling Alley in Mount Clemens, Michigan. Shortly after Detective Smith, driving alone in an undercover vehicle and under surveillance by fellow officers, pulled into the bowling alley parking lot, a brown, four-door Pontiac pulled in behind him. Adams exited the Pontiac and approached Detective Smith's vehicle. At this time, Detective Smith observed three other males in the Pontiac, but, due to the darkness, was unable positively to identify them. The other occupants of the Pontiac were defendant James Ferrell, IV, Steven Moore, and Grady Whiteside.*
 
 
 3
 Adams informed Detective Smith that he was uncomfortable with the bowling alley location for the drug transaction and directed Smith to the parking lot on the south side of a Holiday Inn Motel located across the street. Detective Smith proceeded to the Holiday Inn lot as directed. Upon arriving, he observed the Pontiac pull in behind the motel, around the corner from where he had parked. A few seconds later, Adams walked to and entered Smith's vehicle. As instructed by Adams, Moore then drove the Pontiac, with Ferrell and Whiteside still in the back seat, to the parking lot of a YMCA located across the street from the Holiday Inn, where Moore parked in a position facing Detective Smith's vehicle.
 
 
 4
 Inside Detective Smith's vehicle, Smith and Adams negotiated for the sale of two ounces of cocaine base. Adams, however, was only able to produce twenty-four grams of cocaine base, about four grams short of one ounce. Accordingly, Adams and Smith agreed upon a new purchase price of $1500.00.
 
 
 5
 Approximately five to ten minutes after Adams and Smith began negotiating, Ferrell stated to the other occupants of the Pontiac that "he was taking too long" and that Ferrell "was going to get him." Ferrell then directed Moore to drive him back to the rear of the Holiday Inn, where Ferrell, who was wearing a white t-shirt and blue-jean shorts, exited the Pontiac and ran towards the motel. Once Ferrell reached the corner of the building, the surveillance officers lost sight of him.
 
 
 6
 After receiving payment from Adams, Detective Smith exited his vehicle and opened the trunk, which was an arrest signal he and his fellow officers had agreed upon earlier. Adams, Moore, and Whiteside were immediately taken into custody. At this point, Detective Chris Trikes began searching for the remaining suspect--the male dressed in a white t-shirt and blue-jean shorts who had run towards the Holiday Inn. Trikes proceeded first to a hedgerow that ran between the motel building and the parking lot. The hedges were approximately five feet tall and three feet thick. About fifteen feet down the hedgerow from the corner of the motel building, Trikes observed Ferrell in a kneeling position. After Ferrell was taken into custody, Trooper John Lessnau recovered a revolver, which he found next to two knee prints in the soil where Ferrell had been kneeling. From this location, which was approximately five or six feet from where Detective Smith's vehicle was parked, an individual in a kneeling position would have been able to observe the negotiations between Detective Smith and Adams through the hedges.
 
 
 7
 On April 1, 1992, a federal grand jury returned a six-count indictment against Ferrell and Adams. Count one charged Ferrell and Adams with conspiracy to possess with intent to distribute cocaine base, in violation of 21 U.S.C. Sec. 846. Count five charged Ferrell with aiding and abetting Adams in possession with intent to distribute cocaine base, in violation of 21 U.S.C. Sec. 841 and 18 U.S.C. Sec. 2. Count six charged Ferrell with use of a firearm during a drug trafficking crime, in violation of 18 U.S.C. Sec. 924(c). On October 8, a jury found Ferrell guilty on all three of these counts. On November 3, Adams entered a plea of guilty to count five. On April 27, finally, the court denied Ferrell's motion for a new trial and sentenced him to a 157-month term of imprisonment. This timely appeal followed.
 
 
 8
 First, Ferrell contends that the evidence at trial was insufficient to support his convictions. In order to sustain the conviction for conspiracy to possess with intent to distribute cocaine base, Ferrell properly notes that "the government is required to prove the existence of an agreement to violate the drug laws and that each conspirator knew of, intended to join, and participated in the conspiracy." United States v. Lee, 991 F.2d 343, 348 (6th Cir.1993). To sustain the conviction for aiding and abetting possession with the intent to distribute cocaine base, the government must prove that the defendant associated himself with the criminal venture, participated in it as something he wished to bring about, and sought by his actions to make it succeed. United States v. Elkins, 732 F.2d 1280, 1287 (6th Cir.1984). Finally, to sustain the conviction for use of a firearm in relation to a drug trafficking offense, the government must establish the existence of the predicate drug trafficking offense, that the defendant carried or used a firearm, and that the firearm had some relationship to the underlying crime. United States v. Brown, 915 F.2d 219, 223-24 (6th Cir.1990).
 
 
 9
 Here, Ferrell contends, the evidence adduced at trial failed to establish anything beyond his mere presence at the scene of criminal activity. Ferrell argues that the present case is indistinguishable from a recent unpublished decision by this Court, in which we held that a defendant's mere presence at a crime scene, even coupled with the fact that a firearm was discovered nearby, was insufficient to show the defendant's knowing participation in a conspiracy. See United States v. Burgess, 983 F.2d 1069 (6th Cir.1992). Accordingly, Ferrell argues that the government failed to prove his guilt beyond a reasonable doubt on the above charges. We disagree.
 
 
 10
 The standard of review on questions of sufficiency of the evidence is narrow. In criminal cases such as this one, we look only to whether after reviewing "the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." United States v. Beddow, 957 F.2d 1330, 1334 (6th Cir.1992) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Indeed, even "circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not 'remove every reasonable hypothesis except that of guilt.' " United States v. Ellzey, 874 F.2d 324, 328 (6th Cir.1989) (quoting United States v. Stone, 748 F.2d 361, 363 (6th Cir.1984)).
 
 
 11
 At trial, the government introduced the following evidence of Ferrell's knowing participation in the charged conspiracy: (1) Adams directed Steven Moore to park his car across the street from and facing the Holiday Inn lot, which allowed Ferrell to observe the transaction between Adams and Detective Smith; (2) after the negotiations had begun, Ferrell stated to Grady Whiteside that "it was taking too long" and asked to be dropped off at the rear of the Holiday Inn, out of view of the undercover vehicle containing Adams and Detective Smith; (3) Ferrell then ran to the corner of the motel building and disappeared from the sight of the surveillance officers behind a hedge; (4) the officers found Ferrell kneeling behind the hedge at a spot where he could observe the undercover vehicle; and (5) the officers discovered a loaded firearm at the spot where they apprehended Ferrell. From this evidence, a rational jury could have inferred that Ferrell knew of, intended to join, and participated in the conspiracy to sell cocaine base to Detective Smith. Moreover, especially in light of the fact that Adams had been known to use lookouts in the past, a rational jury could also have inferred that Ferrell acted as an armed lookout in an attempt to ensure the success of the sale, and thus both aided Adams and used or carried a firearm during and in relation to a drug trafficking offense.
 
 
 12
 Ferrell's reliance on Burgess, which involved a drug deal similar to the one in the instant matter, is misplaced. In that case, even though authorities recovered a firearm from under the car seat immediately beneath Burgess, this Court reversed his conspiracy conviction based on the fact that "he did absolutely nothing other than sit in the same position in the car while [two of his co-defendants] worked out the final details of the sale." Burgess, 983 F.2d 1069 (Table) 1992 WL 393575, * 7, 1992 U.S.App. LEXIS at * 24. Here, Ferrell did not sit still, but rather instructed Moore to drive him to the back of the Holiday Inn, exited the car with a firearm, and then positioned himself so that he could monitor the transaction between Adams and Detective Smith without in turn being observed by them. This conduct is easily distinguishable from that of Burgess.
 
 
 13
 Second, Ferrell alleges that the trial court erred in denying his motion for a new trial. Following Ferrell's conviction, co-defendant Adams appeared before the district court to enter a guilty plea to count five of the indictment. In response to questioning by the court intended to establish a factual basis for the plea, Adams claimed that Ferrell in fact had no knowledge of the August 29, 1990 drug deal. On the basis of these statements, Ferrell filed a motion for a new trial based on newly discovered evidence. The government, in turn, moved to enhance Adams' sentence for obstruction of justice, contending that Adams had committed perjury in making the statements regarding Ferrell's innocence to the court. At a hearing on these motions, the court stated that it could not find by a preponderance of the evidence that Adams had perjured himself, and thus denied the government's motion. Unable to find that Adams' statements exculpating Ferrell would probably lead to Ferrell's acquittal at a retrial, however, the court also denied Ferrell's motion for a new trial.
 
 
 14
 In construing Federal Rule of Criminal Procedure 33, this Court has recognized a four-part test for motions for a new trial based on newly discovered evidence. The defendant must establish that: (1) the new evidence was discovered after the trial; (2) the evidence could not have been discovered earlier with due diligence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence would likely produce an acquittal if the case were retried. United States v. Seago, 930 F.2d 482, 488 (6th Cir.1991). We review a district court's ruling on a motion for a new trial under an abuse of discretion standard. Id. In doing so, moreover, we note that motions for a new trial based on newly discovered evidence are disfavored and should be granted with caution. Id. (citing United States v. O'Dell, 805 F.2d 637, 640 (6th Cir.1986), cert. denied, 484 U.S. 859 (1987)).
 
 
 15
 Although the district court did not find by a preponderance of the evidence that Adams committed perjury, it also specifically did not credit Adams' statements exculpating his lifelong friend Ferrell. Rather, the court found Adams' credibility and proposed testimony inconclusive as to Ferrell's involvement in the August 29, 1990 drug sale. On retrial, therefore, the court reasoned that a jury would again have to weigh the evidence against Ferrell, which the court characterized as "overwhelming," adduced at the original trial. Accordingly, the court found that Ferrell had not carried his burden of showing that the newly discovered evidence, in the form of Adams' statements, would likely lead to an acquittal if Ferrell were retried. The court thus denied Ferrell's motion. In so ruling, we find that the court did not abuse its discretion. As we believe that the court did not err in finding that the defendant failed the fourth prong of the test for motions for a new trial based on newly discovered evidence, we do not address the other three prongs.
 
 
 16
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 
 
 *
 Whiteside testified that earlier that evening he had been riding in the Pontiac with Moore when they were flagged down by Adams and Ferrell. Adams offered Moore, the driver, five dollars to take him and Ferrell to the Clinton Gables Bowling Alley, where Adams intended to "meet some girls."