59 F.3d 171
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Robert COUCH, Defendant-Appellant.
 No. 94-3292.
 United States Court of Appeals, Sixth Circuit.
 June 20, 1995.
 
 Before: NORRIS and DAUGHTREY, Circuit Judges; FEIKENS, Senior District Judge.*
 OPINION
 ALAN E. NORRIS, Circuit Judge.
 
 
 1
 Robert Couch, a former officer of the Covington, Kentucky police department, challenges his conviction for depriving Larry Overbey of his civil rights while acting under the color of law. A jury convicted Couch of first beating Overbey during the course of an arrest and then filing false criminal charges against him. On appeal, Couch raises numerous issues, most of which concern jury instructions and errors that the district court allegedly made in calculating his sentence.
 
 I.
 
 2
 On August 12, 1992, Larry Overbey had been drinking in Florence, Kentucky, when he pulled his pickup truck onto the northbound lane of Interstate 75. He was travelling at a high rate of speed when Officer Donald Andrews of the Covington police attempted to pull him over. Rather than acquiesce, however, Overbey led the police on a chase, first through the streets of Covington, and finally across the Ohio River. By the time he was pulled over on I-75 in Cincinnati, numerous Covington patrol cars were involved, including that of defendant Couch and co-defendant Michael Kraft.[1]
 
 
 3
 According to his trial testimony, when he arrived on the scene Couch saw Officer Andrews and a suspect, later identified as Overbey, next to a pickup truck. Andrews had his gun drawn. As he approached, Couch saw Overbey "make some kind of move." After Andrews called for help, Couch reached out and tried to grab the suspect but was knocked backwards. He then "jumped up off the ground" and struck Overbey with his metal flashlight "somewhere in the body." With help from other officers, Couch was then able to handcuff Overbey. Only then did Couch notice that Overbey was bleeding from the head and "thought he must have hit his head on the pavement." However, he realized how the injury had been caused when he overheard Andrews tell another officer, "The guy got out of the truck and he fought with us, Sergeant. I had to hit him."
 
 
 4
 For his part, Andrews testified that he struck Overbey twice with the butt of his gun and then sprayed his face with mace as he was handcuffing him. He also saw Couch hit Overbey two or three times on the right side of the head with a flashlight while the latter was face-down on the ground. Although he could not identify the others, Andrews testified that, in addition to himself and Couch, two other officers struck the suspect.
 
 
 5
 No one disputes that the entire incident took but a few seconds. However, there was conflicting testimony concerning whether Overbey offered any resistance or was struck gratuitously by Couch and other officers. Overbey testified that he was standing with his hands clasped behind his neck when an officer delivered an unprovoked blow to his head.
 
 
 6
 As the result of the beating, Overbey was taken to a hospital where he required fifty stitches and was given pain medication.
 
 
 7
 The same day, Couch filed a complaint in Hamilton County Municipal Court charging Overbey with resisting arrest and assault.[2] Overbey eventually entered a no contest plea to a misdemeanor charge of attempted assault, which he maintained he did out of fear that he would otherwise go to jail.
 
 
 8
 A jury subsequently convicted Couch on two counts of violating Overbey's civil rights under color of law. 18 U.S.C. Sec. 242. The district court sentenced him to sixty-three and twelve months' imprisonment, respectively, for each count, to be served concurrently, followed by two years' supervised release. It also ordered a payment of $714 in restitution to Overbey.
 
 
 9
 After the jury verdict, Andrews, who testified for the government, approached Lieutenant William Dorsey and indicated that he could identify the two main culprits involved in the arrest (both affiliated with the Covington police). This "new evidence" led Couch to file a motion for a new trial. After a two-day hearing on the matter, the district court denied the motion.
 
 II.
 A. Jury Instructions
 
 10
 Although jury instructions represent a question of law to be reviewed de novo, this circuit has made it clear that the charge must be reviewed as a whole to determine whether it "fairly and adequately submits the issues and applicable law to the jury." United States v. Martin, 740 F.2d 1352, 1361 (6th Cir. 1984). Thus, no single provision of the entire instruction can be read in isolation. United States v. Lee, 991 F.2d 343, 350 (6th Cir. 1993) (citing United States v. Horton, 847 F.2d 313, 322 (6th Cir. 1988)).
 
 1. Willfulness Instruction
 
 11
 Couch begins by taking issue with the trial court's instruction on willfulness. In its preliminary discussion of the elements required to convict under the statute,[3] the court described willfulness in the following terms:
 
 
 12
 There must have been an intent on the part of the defendant to willfully subject the victim to the deprivation of the Constitutional right involved. That is, with respect to Count One, there must have been an intent on the part of the defendants to willfully subject Larry Overbey to the deprivation of his Constitutional right to be free from the intentional use of unreasonable force by a person acting under color of law.
 
 
 13
 This element was given full elaboration shortly thereafter:
 
 
 14
 [A]n act is done willfully if it is done voluntarily and intentionally, and with the specific intent to do something the law forbids; that is, with an intent to violate a specific protected right....
 
 
 15
 In the case of Count One of the indictment, it means with a specific intent to use more force than is reasonable under the circumstances. In the case of Count Two, it means with a specific intent to arrest the victim without probable cause to believe that the victim committed the crime charged.
 
 
 16
 ... [I]ntent is a state of mind and can be proven by circumstantial evidence....
 
 
 17
 You may infer that a person ordinarily intends all the natural and probable consequences of an act knowingly done....
 
 
 18
 It is not necessary for you to find that the defendants were thinking in constitutional terms at the time of the incident, as a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights. You may find that a defendant acted with the requisite specific intent even if you find that he had no real familiarity with the Constitution or with the particular constitutional rights involved, provided that you find that the defendant willfully and consciously did the act which deprived the victim of his constitutional rights. Nor does it matter that the defendant may have been motivated by hatred, anger or revenge or some other emotion, provided that the intent which I have discussed is present.
 
 
 19
 If you find that the defendants knew what they were doing and that they intended to do what they were doing, and if you find that what they did constituted a deprivation of a Constitutional right, then you may conclude that the defendants acted with the specific intent to deprive the victim of that constitutional right.
 
 
 20
 Couch argued during the charging conference that the jury should be told that the government must prove that he "not only had a generally bad or evil purpose, but also that he had the specific intent to deprive Larry Overbey of his federal constitutional rights."
 
 
 21
 Both sides look to Screws v. United States, 325 U.S. 91 (1945), for guidance. In Screws, the Court grappled with the problem that the statute did not provide the accused with sufficient notice of criminal conduct because constitutional concepts, such as due process, are notoriously protean. To save the statute from his infirmity, the Court noted that the term "willfully" was added in 1909, ostensibly to make the statute less severe:
 
 
 22
 We think the inference is permissible that its severity was to be lessened by making it applicable only where the requisite bad purpose was present, thus requiring specific intent not only where discrimination is claimed but in other situations as well. We repeat that the presence of a bad purpose or evil intent alone may not be sufficient. We do say that a requirement of a specific intent to deprive a person of a federal right made definite by decision or other rule of law saves the Act from any charge of unconstitutionality on the grounds of vagueness.
 
 
 23
 Id. at 103. Couch reads Screws to stand for the proposition that violation of a federal right and the intent to violate that right are two separate elements of the crime. In his view, the instruction permitted the jury to find him guilty of violating Overbey's civil rights without finding that he consciously and intentionally used more force than was necessary to secure Overbey. In short, it is not enough that an officer objectively cross the line by using excessive force; he must know that he is doing so.
 
 
 24
 Although we do not quarrel with this construction of the law, the charge as given adequately conveyed that requirement. As long as the accused specifically intends to use more force than is reasonable under the circumstances, he acts willfully and thus runs afoul of Sec. 242. United States v. Reese, 2 F.3d 870, 885 (9th Cir. 1993), cert. denied, 114 S. Ct. 928 (1994). Furthermore, Screws recognizes that a defendant need not necessarily be "thinking in constitutional terms" if his aim was to deprive an individual of a constitutionally protected right. Screws, 325 U.S. at 106.
 
 
 25
 Thus, the mere intention to use force, which the jury later finds to have been unreasonable, would be insufficient to sustain a conviction under Sec. 242. Reese, 2 F.3d at 885. Rather, Couch must have intended to use unreasonable force, that is, he must have intended to deprive Overbey of his constitutionally protected right to be free from the use of unreasonable force.
 
 
 26
 Reviewing the jury instructions as a whole and paying particular attention to the trial court's instruction on willfulness, we conclude that the jury was "adequately and fairly" apprised of the intent necessary to establish criminal culpability under the statute. The trial court's willfulness instruction begins, "I instruct you that an act is done willfully if it is done voluntarily and intentionally, and with the specific intent to do something which the law forbids; that is, with an intent to violate a specific protected right." (Emphasis added.) This language, coupled with the detailed charge cited earlier, more than satisfies the requirements developed in the relevant case law. No further instruction that the accused acted with "bad or evil intent" is necessary.
 
 2. Reasonable Use of Force
 
 27
 Couch also questions the manner in which the district court instructed the jury about how to analyze a charge of excessive force. Although he concedes that the court's instruction was accurate insofar as it required the jury to apply an "objective reasonableness" test, Graham v. Connor, 490 U.S. 386, 388 (1989), he contends that the instruction proved inadequate because it did not explain that the jury should assess defendant's actions in light of the "difficulties of modern police work."
 
 
 28
 In support of his proposed instruction, which the district court declined to give, Couch notes that it tracks language found in Graham, 490 U.S. at 396, and Smith v. Freland, 954 F.2d 343, 346 (6th Cir.), cert. denied, 112 U.S. 1954 (1992).
 
 
 29
 However, as this court has held in the past, "a judge does not commit error because he or she fails to use language contained in a request, so long as the instruction given is accurate and sufficient." United States v. Montgomery, 980 F.2d 388, 393 (6th Cir. 1992). Here the court provided the following guidance to the jury:
 
 
 30
 [Y]ou may look to such factors as the severity of the crime of which Larry Overbey was suspected at the time of his arrest; whether, at the time of his arrest, Mr. Overbey posed an immediate threat to the safety of the defendants or other police officers; whether, at the time of his arrest, Mr. Overbey was resisting arrest or attempting to evade arrest by flight; the need for the application of force; whether the victim was restrained; the victim's position in relation to where the defendants were located; the relationship between the need and the amount of force that was used; the extent of injury inflicted; the physical condition of the victim; and whether force was applied in good faith or for the very purpose of causing harm. You may also consider the character and duration of the alleged assault, and the manner in which the alleged assault occurred, and any other factors that you deem relevant.
 
 
 31
 As this passage indicates, the district court took pains to require that the jury evaluate the incident in a context-sensitive manner. Because the jury was properly instructed, it makes no difference that the language of the instruction varied somewhat from what Couch would have preferred.
 
 3. Overbey's No Contest Plea
 
 32
 The final objection to the jury instructions presents a question of Ohio law. The second count for which Couch stands convicted stems from the allegation that he filed criminal charges against Overbey without probable cause. Couch's defense was that Overbey had in fact engaged in conduct that amounted to assault and resisting arrest. The court permitted the introduction of Overbey's plea of no contest to the attempted assault charge and allowed the government to present evidence of the negotiations that resulted in the plea, including testimony from Overbey that he entered the plea out of fear rather than guilt. Obviously, if the jury were to conclude that by entering a no contest plea Overbey admitted that he had actually engaged in criminal conduct, then Couch would have made out a complete defense to Count Two.
 
 
 33
 However, the court instructed the jury as follows:
 
 
 34
 You have been permitted to consider the fact that Mr. Overbey plead [sic] no contest to the attempted assault and resisting arrest charges against him in the Hamilton County Municipal Court. I instruct you that the plea of no contest is not a plea of guilty, and may not be considered as an admission of guilt by Mr. Overbey of the acts charged. I instruct you, therefore, that you may not draw the inference that Mr. Overbey admitted his guilt, or that he committed the acts charged by virtue of his plea of no contest in the state court.
 
 
 35
 This instruction appears to comport with Ohio Revised Code Sec. 2937.07, which directs that a no contest plea "shall not be construed to import an admission of any fact at issue in the criminal charge in any subsequent action or proceeding, whether civil or criminal."[4]
 
 
 36
 Were this statute the only Ohio authority bearing on the propriety of the instruction, our inquiry would be at an end. However, the Ohio Supreme Court promulgated a rule of procedure purporting to govern no contest pleas, and that rule differs markedly from its statutory counterpart. The Ohio Constitution grants to the Supreme Court the power to prescribe rules governing practice and procedure in all courts of the state, so long as they do not "abridge, enlarge, or modify any substantive right." Ohio Const., art. IV, Sec. 5(b). Statutes that conflict with such rules are of no further force or effect. Id.; Boyer v. Boyer, 46 Ohio St. 2d 83, 86, 346 N.E.2d 286, 288, cert. denied, 429 U.S. 889 (1976) (rules control on matters of procedure, statutes on matters of substance).
 
 
 37
 According to the rule promulgated, Ohio Rule of Criminal Procedure 11(B)(2), "[t]he plea of no contest is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the indictment, information, or complaint, and such plea or admission shall not be used against the defendant in any subsequent civil or criminal proceeding." If this rule prevails over the statute, then the jury should have been allowed to consider Overbey's no contest plea as an admission of the truth of the facts alleged in the charging document, since Overbey was not a party to the instant litigation, and the rule prohibits future use of the plea only against a defendant who entered a plea of no contest.
 
 
 38
 Our resolution of the issue raised by Couch hinges upon whether the broader language of Sec. 2937.07 governing subsequent use of a no contest plea confers a substantive right that survived the promulgation of Ohio Rule of Criminal Procedure 11(B)(2). Although no Ohio court has addressed this precise question, the Ohio Supreme Court has held that another portion of Sec. 2937.07 is substantive and takes precedence over the rule. In City of Cuyahoga Falls v. Bowers, 9 Ohio St. 3d 148, 459 N.E.2d 532 (1984), the syllabus to the court's opinion reads as follows: "The provision in R.C. 2937.07 requiring an explanation of circumstances following a plea of no contest has not been superseded by the enactment of Criminal Rule 11 because the statutory provision confers a substantive right."[5]
 
 
 39
 Under Bowers, a defendant who enters a plea of no contest enjoys a substantive right conferred by the statute to have his guilt or innocence determined upon an explanation of the circumstances of the offense, and to be discharged by a finding of not guilty where the explanation reveals a failure to establish all the elements of the offense. See Bowers, 9 Ohio St. 3d at 150, 459 N.E.2d at 535; Chagrin Falls v. Katelanos, 54 Ohio App. 3d 157, 159, 561 N.E.2d 992, 994 (1988). It does not follow, however, that the statute also confers a substantive right concerning all subsequent uses of a no contest plea.
 
 
 40
 When the rule and statute are parsed for inconsistencies, what remains is a merger of the procedural parts of the rule with the substantive portions of the statute with the result that:
 
 
 41
 (1) When one enters a plea of no contest, he admits the facts set out in the explanation of circumstances of the offense entered by the government and consents to the judge determining his guilt or innocence on the basis of that explanation of circumstances;
 
 
 42
 (2) The judge who receives a no contest plea cannot make a determination of guilt in the absence of an explanation of circumstances that includes facts that satisfy all the elements of the offense, and must discharge the defendant where the explanation is defective in that regard; and
 
 
 43
 (3) A defendant's no contest plea or admission cannot be used against him in any subsequent civil or criminal proceedings. As this prohibition retains any substantive right conferred by the statute on a defendant entering a no contest plea, the Ohio Supreme Court was at liberty to eliminate by rule the arguably broader nonsubstantive prohibition found in the statute.
 
 
 44
 As a consequence, Ohio law did not prohibit the jury's consideration of Overbey's willingness to admit the truth of the facts underlying the attempted assault charge when he pleaded no contest to that charge, since he is not a party to this litigation. The district court should have instructed the jury that it was entitled to weigh Overbey's willingness to admit the truth of those facts against his testimony that he entered his plea out of fear rather than guilt for purposes of determining his guilt or innocence on the criminal charge. Although the admission of fact he made in the earlier criminal proceeding does not preclude Overbey's explanation of the reason he made that admission, the jury was nevertheless entitled to weigh that earlier admission against his most recent explanation. Furthermore, because the significance of the no contest plea goes to the heart of Couch's defense to the second count of the indictment, the erroneous instruction cannot be said to be harmless, and requires reversal of the conviction for willfully filing criminal charges without probable cause.[6] Couch is entitled to a new trial on Count Two.
 
 B. Newly Discovered Evidence
 
 45
 Couch's final challenge to the validity of his conviction relates to evidence that came to light after trial respecting the testimony of a principal government witness, Officer Donald Andrews.
 
 
 46
 According to the affidavit of Lieutenant William Dorsey signed on October 4, 1993, Andrews had requested a meeting the previous summer. He appeared in what Dorsey described as "a very distressed and emotional condition" because of the "consequences of the Overbey matter." Specifically, Andrews told Dorsey that two other individuals, whom he named, were responsible for the Overbey beating.
 
 
 47
 Based upon this information, Couch moved for a new trial pursuant to Federal Rule of Criminal Procedure 33. The district court responded by ordering an evidentiary hearing. Several witnesses, including Andrews, testified. At the hearing, Andrews stated that "Lieutenant Dorsey started changing things around" with respect to the substance of their conversation. According to Andrews, he did not recant his trial testimony.
 
 
 48
 In its order denying the motion, the district court summed up the testimony in these terms: "[T]hroughout these proceedings Officer Andrews held steadfastly to his original testimony. Furthermore, none of the witnesses testified that Officer Andrews had ever recanted his testimony in regard to Defendant Couch."
 
 
 49
 This court reviews the denial of a motion for a new trial for abuse of discretion by the district court. United States v. Barlow, 693 F.2d 954, 966 (6th Cir. 1982), cert. denied, 461 U.S. 945 (1983). Such motions, when based on "recanting" witnesses, are viewed with suspicion. United States v. Chambers, 944 F.2d 1253, 1264 (6th Cir. 1991), cert. denied, 502 U.S. 1112 (1992).
 
 
 50
 The criteria for obtaining a new trial based upon newly discovered evidence is well-settled and requires the movant to prove that the evidence: (1) was only discovered after trial; (2) could not have been discovered earlier; (3) is material; and (4) would likely have produced an acquittal. United States v. Garland, 991 F.2d 328, 335 (6th Cir. 1991).
 
 
 51
 After reviewing the record, we conclude that the district court properly declined to grant a new trial. Andrews explicitly testified that he did not recant his testimony. In fact, no witness maintained that Andrews told him that his testimony about Couch was inaccurate, only that others were equally, if not more, culpable. Furthermore, both Andrews' attorney and the Assistant United States Attorney denied that any promises were made in exchange for testimony. Under these circumstances, Couch has failed to make the required evidentiary showing and the district court was well within its discretion in denying the motion.
 
 C. Sentencing Issues
 1. Offense Classification
 
 52
 The first issue raised by Couch with respect to his sentencing involves the district court's decision to classify the underlying offense as an aggravated assault. To determine the base offense level for a violation of a person's civil rights, the Sentencing Guidelines instruct the district court to apply the greater of 10 or "6 plus the offense level applicable to any underlying offense." U.S.S.G. Sec.2H1.4(a). The court selected aggravated assault as the underlying offense, which a related Application Note defines as "a felonious assault that involved (a) a dangerous weapon with intent to do bodily harm (i.e., not merely to frighten), or (b) serious bodily injury ...." U.S.S.G. Sec.2A2.2, comment. (n.1).
 
 
 53
 Essentially, Couch's challenge is factual. He argues that, rather than intend to do bodily harm, he was merely reacting to a situation he perceived as threatening. This contention is at odds with testimony that Couch struck Overbey on the head with a flashlight while he was face-down on the ground. Moreover, Couch does not seriously contend that a metal flashlight is not a "dangerous weapon" and, in fact, the Eleventh Circuit has found that a metal pipe falls under the definition. United States v. Park, 988 F.2d 107, 110 (11th Cir.), cert. denied, 114 S. Ct. 226 (1993).
 
 
 54
 Accordingly, the district court properly classified the underlying offense.
 
 2. Use of a Dangerous Weapon
 
 55
 The district court enhanced Couch's sentence by four levels because it found that a dangerous weapon was used. U.S.S.G. Sec.2A2.2(b)(2)(B). Couch argues that this constitutes "double counting" because it is the use of the flashlight as a dangerous weapon that transforms a minor assault into an aggravated assault under the Sentencing Guidelines. Compare U.S.S.G. Sec.2A2.2 with Sec.2A2.3 (possession of a dangerous weapon versus use thereof a distinguishing factor).
 
 
 56
 The contention is without merit. The language of the aggravated assault provision clearly provides for a calibrated adjustment of the offense level according to the use made of the dangerous weapon and, as such, does not double count. U.S.S.G. Sec.2A2.2(b)(3).
 
 3. Enhancement for Serious Bodily Injury
 
 57
 The aggravated assault provision also permits a four-level upward adjustment in the base offense level when the victim sustains serious bodily injury.[7] U.S.S.G. Sec.2A2.2(b)(3)(B). Serious bodily injury, in turn, is defined as "involving extreme physical pain or the impairment of a function of a bodily member, organ, or mental faculty." U.S.S.G. Sec.1B1.1, comment. (n.1(j)).
 
 
 58
 The district court found that Overbey suffered serious bodily injury and therefore imposed this upward adjustment. Because the resolution of this question is factual, we review for clear error. United States v. Tipton, 11 F.3d 602, 609 (6th Cir. 1993), cert. denied, 114 S. Ct. 2692 (1994). Overbey testified that he was "pretty busted up" after the incident; he required emergency medical treatment, including stitches, and suffered pain as a result. That the emergency room doctor did not diagnose any long-term cognitive impairment does not invalidate the trial court's ruling given our standard of review.
 
 4. Denial of Downward Departure
 
 59
 Finally, Couch argues that the district court abused its discretion in declining to grant him a downward departure. He cites several reasons to justify the departure: the victim's criminal behavior enhanced the danger Couch perceived; he has lost his profession; as a former police officer, he is at greater risk during incarceration; he poses no threat to the community; and the court did not consider Couch's conduct in light of all the circumstances.
 
 
 60
 However, this court does not review denial of a motion for downward departure as long as the sentence imposed was within the properly calculated guideline range. United States v. Moss, 9 F.3d 543, 554 (6th Cir. 1993). Accordingly, we will not consider this argument.
 
 III.
 
 61
 For the foregoing reasons, the conviction and sentence imposed under the first count of the indictment are affirmed. The conviction and sentence imposed under the second count of the indictment are reversed, and the cause is remanded to the district court for further proceedings according to law and consistent with this opinion.
 
 
 
 *
 The Honorable John Feikens, United States Senior District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Kraft was later acquitted and is not party to this appeal
 
 
 [2]
 Couch testified that his sergeant instructed him to do so
 
 
 [3]
 Whoever, under color of any law ... willfully subjects any inhabitant of any State ... to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States ... shall be fined not more than $1,000 or imprisoned not more than one year, or both; and if bodily injury results shall be fined under this title or imprisoned not more than ten years, or both
 18 U.S.C. Sec. 242 (1988) (subsequently amended).
 
 
 [4]
 Section 2937.07 reads in pertinent part as follows:
 If the offense be a misdemeanor and the accused pleads guilty ... the court ... shall call for explanation of circumstances of the offense from the affiant or complainant or his representatives, and after hearing the same, together with any statement of the accused, shall proceed to pronounce sentence. ...
 If the plea be "no contest" ... it shall constitute a stipulation that the judge ... may make finding of guilty or not guilty from the explanation of circumstances, and if guilt be found, impose ... sentence accordingly. Such plea shall not be construed to import an admission of any fact at issue in the criminal charge in any subsequent action or proceeding, whether civil or criminal.
 
 
 [5]
 Under Ohio's unique "syllabus rule," the syllabus to Ohio Supreme Court opinions contains the law of the case. State ex rel. Donahey v. Edmondson, 89 Ohio St. 93, 107-08, 105 N.E. 269, 273 (1913)
 
 
 [6]
 Because the admissions made by Overbey in the context of the no contest plea, if deemed conclusive by the jury, would not constitute a complete defense with respect to defendant's use of unreasonable force, reversal is not required as to the first count of the indictment
 
 
 [7]
 Defendant concedes that the victim sustained "bodilyinjury," which results in a two-level enhancement. U.S.S.G. Sec.2A2.2(b)(3)(A)