**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Alicio M. SANCHEZ (89–2432) and Reinaldo Cubilla (89–2433),**
**Defendants–Appellants.**

**Nos. 89–2432, 89–2433.**

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 28, 1991.

Decided March 28, 1991.

1452

Kathleen Moro Nesi, Asst. U.S. Atty. (argued), Detroit, Mich., James A. Brunson, Asst. U.S. Atty., Bay City, Mich., for plaintiff-appellee.

Robert J. Rhead, Midland, Mich., Richard O. Milster (argued), Patterson, Gruber, Kennedy, Gill & Milster, Bay City, Mich., for Sanchez.

Richard O. Milster (argued), Patterson, Gruber, Kennedy, Gill & Milster, Bay City, Mich., David G. Myers, Caro, Mich., for Cubilla.

Before MARTIN and BOGGS, Circuit Judges, and ENGEL, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

Reinaldo Cubilla and Alicio Sanchez appeal their convictions for conspiracy to possess with intent to distribute over five kilograms of cocaine in violation of 21 U.S.C. § 846. On appeal defendants challenge the lack of individual interpreters, the jury instructions relating to the conspiracy, and the application of the Federal Sentencing Guidelines. We affirm both convictions but remand both cases to the district court for resentencing.

On October 19, 1988, a federal grand jury in Bay City, Michigan returned a three-count indictment naming Reinaldo Cubilla and Alicio Sanchez. Also named in the indictment were Candido Alvarez, Felix Santana, a/k/a Felito, and Joaquine Diaz, Jr. Count one alleged that all five individuals conspired to possess with intent to distribute over five kilograms of cocaine between approximately June 15, 1987 and August 25, 1988. Neither Cubilla nor Sanchez were named in counts two or three of the indictment.

On April 21, 1988, Drug Enforcement Administration agents James O'Brien and Renee Triplett were monitoring inbound and outbound passengers at the Detroit Metropolitan Airport. Agent O'Brien observed Alicio Sanchez and noticed his actions were inconsistent with many of the other travelers he normally observed. Both agents also observed Gilberto Estevez enter the terminal from a Northwest Airlines flight from Miami, Florida. Estevez walked up to Sanchez, nodded slightly in recognition, and the two men walked away together. The two men never spoke or shook hands. Estevez was carrying a duffel bag over his shoulder. The two men left the airport building together and headed towards the parking area.

Agent Triplett walked up to Estevez and spoke to him. Sanchez continued walking and was followed by Agent O'Brien. Estevez did not object to Agent Triplett's request to search his duffel bag and she began searching the bag when she found a package wrapped in tape. At this point, Estevez dropped the duffel bag from his shoulder and took off running. After a short chase, Estevez was apprehended. Sanchez was also apprehended by Agent O'Brien while trying to escape in an automobile driven by his girlfriend, Rosa Hidalgo.

Further search of Estevez's duffel bag revealed a second package, also wrapped in tape. These two packages contained approximately one kilogram of cocaine. All three individuals were taken into custody and interviewed by Spanish-speaking agents of the United States Immigration and Naturalization Service. During the interview Sanchez told the agents that 1165 Coldwater, Flint, Michigan, was his current address. Both Sanchez and his girlfriend were released from custody while Estevez was held.

This did not end the agents' investigation. Based upon information obtained from questioning Estevez and Sanchez, a search warrant was obtained for Apartment 619 of the Sugar Tree Apartments in Mt. Morris, Michigan. Evidence seized from this apartment included a loaded .357 revolver, approximately $150 in cash, an apartment lease from Sugar Tree Apartments in the name of Reinaldo Cubilla, a triple beam scale with cocaine residue, approximately 31 zip-loc bags, each containing a small quantity of cocaine, and a paging device.

With this information and other information gathered from the investigation, a search warrant for 1165 Coldwater was obtained. The apartment appeared to have been vacant and had no signs of recent habitation. The agents did find a crumpled-up Miami bank deposit slip for $5,000, dated August 10, 1987, bearing the name of Candido Alvarez. Later investigation identified Candido Alvarez as the leader of the

venture in which Sanchez and Cubilla were involved. Candido Alvarez was tried separately and convicted on all three counts of the indictment. Alvarez's conviction was recently affirmed by this court. *United States v. Alvarez*, 927 F.2d 300 (6th Cir. 1991).

The trial of Cubilla and Sanchez began on September 18, 1989. On September 21, the jury found both defendants guilty as charged. Cubilla received a sentence of fifteen and a half years incarceration, five years supervised release, plus a fifty dollar special assessment fee. Sanchez received a sentence of seventeen and a half years incarceration, five years supervised release, plus a special assessment fee of fifty dollars. While the Sentencing Guidelines speak in terms of months, the shift to years makes the time to be served clearer.

At trial, Alice Alvarez, the wife of Candido Alvarez, testified extensively as to the involvement of Cubilla and Sanchez in her husband's cocaine trafficking organization. Joaquine Diaz, Jr., the son of Alice Alvarez, also testified that Cubilla and Sanchez were friends of his step-father. Gilberto Estevez, who was apprehended at the Detroit Airport, also testified as to Cubilla and Sanchez's involvement with Candido Alvarez in cocaine trafficking.

On appeal, both Sanchez and Cubilla contend that their rights under the Court Interpreters Act, 28 U.S.C. §§ 1827–28, and the sixth amendment were violated because each was not provided with an individual interpreter throughout the trial. Specifically, defendants allege that the district court erred when the court borrowed one of the two interpreters available to the defendants to act as an interpreter for a government witness, Gilberto Estevez, who speaks only Spanish. This left Sanchez and Cubilla to share the remaining interpreter when communicating with counsel. This, defendants argue, prevented each from effectively communicating with counsel during a critical stage of their trial.

■ We begin with defendants' contention that the Court Interpreters Act, 28 U.S.C. § 1827 (Supp.1990), requires that a defendant be provided with "continuous translation throughout the proceedings." The Act provides:

(d)(1) The presiding judicial officer, with the assistance of the Director of the Administrative Office of the United States Courts, shall utilize the services of the most available certified interpreter, or when no certified interpreter is reasonably available, as determined by the presiding judicial officer, the services of an otherwise qualified interpreter, in judicial proceedings instituted by the United States, if the presiding judicial officer determines on such officer's own motion or on the motion of a party that such party (including a defendant in a criminal case), or a witness who may present testimony in such judicial proceedings—

(A) speaks only or primarily a language other than the English language; or

(B) suffers from a hearing impairment (whether or not suffering also from a speech impairment)

so as to inhibit such party's comprehension of the proceedings or communication with counsel or the presiding judicial officer, or so as to inhibit such witness' comprehension of questions and the presentation of such testimony.

Section 1827(f)(1) permits any individual who is entitled to an interpreter the right to waive such interpretation, if such waiver is made after consultation with an attorney and approved by the presiding judicial officer. 28 U.S.C. § 1827(f)(1) (Supp.1990).

■ There is nothing in the language of the Act or in the legislative history which requires every defendant in a multi-defendant criminal action be provided with his own individual interpreter. To the contrary, the Act itself authorizes the use of a single interpreter in multi-defendant cases. Section 1828(a) directs the United States Courts to establish a program to "provide a capacity for simultaneous interpretation services in multi-defendant criminal actions...." The House Report states:

It is the committee's intent that all interpretations are to be made in the consecutive mode except in those limited situations where the court determines, and all

the parties agree, that simultaneous or summary mode will aid in the efficient administration of justice. The use of simultaneous interpretation is authorized to deal with two situations: first, in cases where the services of a manual (sign language) interpreter are to be utilized, and *second, in multi-defendant criminal ... actions.*

H.R.Rep. No. 1687, 95th Cong., 2d Sess. 7–8, *reprinted in* 1978 U.S.Code Cong. & Admin.News 4652, 4658–59 (emphasis added). "Simultaneous translation requires the language interpreter to translate and to speak contemporaneously with the individual whose communication is being translated." *United States v. Bennett,* 848 F.2d 1134, 1140 n. 7 (11th Cir.1988). Every circuit which has addressed this issue has concluded that the Act does not require every defendant in multi-defendant cases be provided with his own personal interpreter. *See, e.g., United States v. Bennett,* 848 F.2d 1134 (11th Cir.1988); *United States v. Moya–Gomez,* 860 F.2d 706, 740 (7th Cir.1988); *United States v. Lim,* 794 F.2d 469 (9th Cir.), *cert. denied sub nom. Ahn v. United States,* 479 U.S. 937, 107 S.Ct. 416, 93 L.Ed.2d 367 (1986).

■ Our inquiry as to a district court's decision concerning the appropriate use of interpreters in the courtroom focuses upon whether the purposes of the Act were adequately met. *Valladares v. United States,* 871 F.2d 1564, 1566 (11th Cir.1989) (citing *United States v. Lim,* 794 F.2d 469, 470 (9th Cir.1986)). The purposes of the Act are to ensure that a party has comprehension of the proceedings and to provide the means to communicate effectively with counsel. *See United States v. Tapia,* 631 F.2d 1207, 1210 (5th Cir.1980). Our ultimate determination in addressing a claim of inadequate interpretation is "whether such failure made the trial fundamentally unfair." *Id.* As long as the purposes of the Act have been met, the appropriate use of interpreters in the courtroom is a matter within the sound discretion of the district court. *See, e.g., Valladares,* 871 F.2d at 1566; *Lim,* 794 F.2d at 471; *United States v. Coronel–Quintana,* 752 F.2d 1284, 1291

(8th Cir.), *cert. denied,* 474 U.S. 819, 106 S.Ct. 66, 88 L.Ed.2d 54 (1985).

■ In holding that the Interpreters Act did not require each defendant in this case be provided with a personal interpreter, we do not suggest that a situation will *never* arise where multiple defendants should each be provided with a personal interpreter in order to fulfill the requirements of the Act. For example, a personal interpreter should be provided if the district court were to make a finding of direct conflict between defendants because their respective positions were so diverse, such as in an alibi defense. If such a situation should arise where the district court thinks the purposes of the Act can not be met utilizing a single interpreter in a multi-defendant case, the district court need only seek approval under the Criminal Justice Act for the appointment of any additional interpreters.

When utilizing a single interpreter during a multi-defendant action, the district court must always be cognizant of the underlying purposes of the Act. The district court must provide each defendant the time and the ability to confer effectively with counsel throughout the proceedings. In cases where there are a significant number of defendants, this will require the district court to grant defense counsel ample time during trial to confer with an individual defendant who wishes to communicate with counsel, separate and apart from all other defendants. The district court must ensure that *each* defendant is able to understand the proceedings.

■ In this case we find that requiring Sanchez and Cubilla to share an interpreter during the testimony of Estevez did not violate the requirements of the Act. Throughout most of the trial each defendant was provided with his own interpreter. On the one occasion where the court "borrowed" one of the interpreters available to the defendants in order to assist a witness, the second interpreter was still present at the defense table and able to assist both Sanchez and Cubilla. Furthermore, the witness, Estevez, testified in Spanish, thus eliminating the need for interpretation of

his testimony to the defendants who both understand Spanish. This left ample opportunity for each defendant to confer with counsel throughout the testimony of Estevez, utilizing the remaining interpreter. *See Lim*, 794 F.2d at 471. It also should be noted that neither defendant made any objection to this arrangement during trial. The district court, before permitting the government to "borrow" one of defendants' interpreters, asked each defendant whether there was any objection to this arrangement. Neither voiced any objection. "Only if the defendant makes any difficulty with the interpreter known to the court can the judge take corrective measures. To allow a defendant to remain silent throughout the trial and then, upon being found guilty, to assert a claim of inadequate translation would be an open invitation to abuse." *Valladares*, 871 F.2d at 1566.

■ We likewise reject defendants' sixth amendment claim. "As a constitutional matter the appointment of interpreters is within the district court's discretion." *Bennett*, 848 F.2d at 1141 (citations omitted). We find no abuse of discretion in the actions of the district court in this case. It was entirely appropriate for the district court to enlist the aid of an interpreter for a witness by borrowing one of the two interpreters available to the defendants.

■ Defendants next argue that the district court erred in its instructions to the jury. Defendants contend that the proffered jury instructions were inadequate because they (1) instructed the jury only as to a single conspiracy where the evidence established multiple conspiracies, and (2) failed to require the jury to find beyond a reasonable doubt the amount of drugs (over five kilograms) charged in the indictment. Defendants did not object to these instructions nor propose alternate instructions. Thus they have waived their right on this particular issue, and the instructions are reviewable only for plain error. Fed.R.Crim.P. 30; *United States v. Pearce*, 912 F.2d 159 (6th Cir.1990).

■ When the evidence introduced at trial is such that the jury could reasonably find more than one conspiracy, the trial court should give the jury a multiple conspiracy instruction. *United States v. Davenport*, 808 F.2d 1212 (6th Cir.1987); *United States v. Warner*, 690 F.2d 545 (6th Cir.1982); *see also United States v. Sutherland*, 656 F.2d 1181 (5th Cir.1981), *cert. denied*, 455 U.S. 949, 102 S.Ct. 1451, 71 L.Ed.2d 663 (1982). In *Warner*, as in the present case, the defense did not request an instruction on multiple conspiracy or object when the court failed to give one. The court reviewed this failure to instruct for plain error and declined to reverse because the jury was adequately instructed that it could only convict for the "conspiracy alleged in the indictment of which [defendant] was a part." *Warner*, 690 F.2d at 551.

In the present case it is not entirely clear whether there was sufficient evidence to warrant a multiple conspiracy instruction. The testimonial evidence of Alice Alvarez and Gilberto Estevez in conjunction with the evidence seized at the apartments established that Cubilla and Sanchez were co-conspirators in an overall conspiracy which function was to transport cocaine from Florida to Michigan. "In order to prove a single conspiracy, the government must show that each alleged member agreed to participate in what he knew to be a collective venture directed towards a common goal." *Warner*, 690 F.2d at 549 (quoting *United States v. Martino*, 664 F.2d 860, 876 (2d Cir.1981)). Although defendants argue that the separate cocaine transactions were separate conspiracies, "a single conspiracy is not transposed into a multiple one simply by lapse of time, change in membership, or a shifting emphasis on its locale of operations." *United States v. Heinemann*, 801 F.2d 86, 92 (2d Cir.1986), *cert. denied*, 479 U.S. 1094, 107 S.Ct. 1308, 94 L.Ed.2d 163 (1987). Because the evidence introduced at trial only supported a finding that a single conspiracy existed, we find no error in the district court's failure to give a multiple conspiracy instruction.

■ Defendants also argue that the district court incorrectly instructed the jury as

to the elements of conspiracy. Specifically, defendants argue that the district court erred in not instructing the jury that they must find beyond a reasonable doubt the amount of drugs, over five kilograms of cocaine, charged in the indictment. We disagree. To sustain a conviction under 21 U.S.C. § 846 the government must prove the existence of an agreement to violate the drug laws and that each conspirator knew of, intended to join, and participated in the conspiracy. *United States v. Pearce,* 912 F.2d 159, 161 (6th Cir.1990); *United States v. Christian,* 786 F.2d 203, 211 (6th Cir.1986).

The underlying substantive offense with which defendants were charged is 21 U.S.C. § 841(a)(1), which makes it unlawful to "manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance...." Section 841(b) relates to penalties which depend upon the type and quantity of drugs. In *United States v. Moreno,* 899 F.2d 465 (6th Cir.1990), we held that, "section 841(b) sets forth penalty provisions only and not separate 'lesser included' offenses. As such, the sentencing judge, not the jury, has the prerogative to make a determination of the quantity of drugs involved in the scheme and sentence accordingly." *Id.* at 473. *See also United States v. Rey,* 923 F.2d 1217 (6th Cir.1991) (fact-finding function of the jury is to return a verdict of guilt or innocence and the quantity requirements of § 841 are applicable only to sentencing). Therefore, the district court was correct in not instructing the jury to determine the amount of cocaine "possessed" by the defendants.

Cubilla and Sanchez next argue that the evidence is insufficient to sustain their convictions for conspiracy to possess and distribute cocaine under 21 U.S.C. § 846. In determining the sufficiency of the evidence to support a guilty verdict, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential element of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). As previously noted, to sustain a conviction under section 846, the government must prove the existence of an agreement to violate the drug laws and that each conspirator knew of, intended to join, and participated in the conspiracy. *Pearce,* 912 F.2d at 161 (quoting *United States v. Stanley,* 765 F.2d 1224, 1237 (5th Cir.1985)); *see also United States v. Dempsey,* 733 F.2d 392 (6th Cir.), *cert. denied,* 469 U.S. 983, 105 S.Ct. 389, 83 L.Ed.2d 323 (1984). Proof of a formal agreement is unnecessary; a tacit or mutual understanding among the parties is sufficient to show a conspiracy. *United States v. Hughes,* 891 F.2d 597, 601 (6th Cir.1989). "Proof of knowledge is satisfied by proof that the defendant knew the essential object of the conspiracy.... Every member of a conspiracy need not be an active participant in every phase of the conspiracy, so long as he is a party to the general conspiratorial agreement." *United States v. Christian,* 786 F.2d 203, 211 (6th Cir.1986) (quoting *United States v. Cuni,* 689 F.2d 1353, 1356 (11th Cir.1982)).

Both Alice Alvarez and Gilberto Estevez testified as to the involvement of Cubilla and Sanchez in the drug trafficking operation. Alice Alvarez testified that she overheard her husband and Cubilla talking about how well they were doing in the cocaine business. Estevez testified that he went with Cubilla to pick up the cocaine he was caught transporting to Michigan. Alvarez also testified that she heard her husband and Sanchez discussing the problems associated with selling cocaine on credit. Estevez testified that he was instructed to deliver the cocaine to Sanchez on the day he was apprehended.

Defendants object to the testimony of Alvarez and Estevez, claiming it is unreliable and, therefore, incapable of supporting their convictions. "Attacks on witness credibility are simple challenges to the quality of the government's evidence and not the sufficiency of the evidence." *United States v. Adamo,* 742 F.2d 927, 932 (6th Cir.1984), *cert. denied sub nom. Freeman v. United States,* 469 U.S. 1193, 105 S.Ct. 971, 83 L.Ed.2d 975 (1985). Thus any argument relating to credibility of the govern-

ment's witnesses is irrelevant to our determination of the sufficiency of the evidence. *See United States v. Rios,* 842 F.2d 868 (6th Cir.1988), *cert. denied,* 488 U.S. 1031, 109 S.Ct. 840, 102 L.Ed.2d 972 (1989).

 Defendants next argue that they each were denied effective assistance of counsel. However, neither defendant made this claim to the district court. This court will not review an ineffective assistance of counsel claim raised for the first time on appeal. *United States v. Swidan,* 888 F.2d 1076 (6th Cir.1989). Therefore, defendants are precluded from raising this issue.

 Finally, defendants raise several arguments with respect to the proper application of the Sentencing Guidelines. First, defendants argue that the district court erred in imposing a two-level enhancement to each defendant's offense level for "obstruction of justice." Section 3C1.1 provides, in pertinent part:

> If the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the offense level by 2 levels.

United States Sentencing Commission, *Guidelines Manual,* § 3C1.1 (Nov.1989).[1] The district court found that both Sanchez and Cubilla had attempted to avoid apprehension by law enforcement officials and thus, "impeded ... the administration of justice during the investigation ... of the instant offense...." *Id.* The district court based this finding on evidence in the record which indicated that immediately after the arrest of Gilberto Estevez, both Sanchez and Cubilla abandoned the apartment they had previously been occupying. The question as to whether defendants' conduct constitutes obstruction of justice, "turns primarily on the legal interpretation of a guideline term" and is thus reviewed *de novo.* *United States v. Stroud,* 893 F.2d 504, 507 (2d Cir.1990).

In *United States v. Perry,* 908 F.2d 56 (6th Cir.1990), we held that § 3C1.1 was applicable to a defendant who, "jumped bond before sentencing and was not apprehended until the better part of a year had passed." *Id.* at 59. The court reasoned that "[t]he prosecution of an offense includes the sentencing proceedings, so it is clear that [the defendant's] attempt to avoid incarceration occurred 'during ... the prosecution of the instant offense.'" *Id.* This interpretation of the applicability of § 3C1.1 is supported by the recent amendment to § 3C1.1 of the Guidelines, effective November 1, 1990. The language of § 3C1.1 has been expanded to include conduct which occurred during the "investigation and prosecution, *or sentencing* of the instant offense." *See Guidelines Manual,* § 3C1.1 (Nov.1990) (emphasis added). Furthermore, application note 3 to the commentary of section 3C1.1 now lists, "escaping or attempting to escape from custody before trial or sentencing; or willfully failing to appear, as ordered, for a judicial proceeding," as conduct requiring the application of section 3C1.1. *Id.* at (n. 3).

Our holding in *Perry,* however, is not dispositive as to whether § 3C1.1 is properly applied to the defendants' conduct in this case. In *Perry,* the defendant had been convicted of conspiracy to distribute cocaine but remained on bond pending sentencing because he was in a drug rehabilitation center. The defendant was instructed to attend a meeting with a probation officer; he failed to keep this appointment and thus became a fugitive. The defendant was arrested some eight months later in another city. Due to his conviction and the terms of his bond, the defendant in *Perry* was obligated to attend the scheduled meeting with the probation officer. In this case, neither Sanchez or Cubilla had any obligation to continue to reside at their known residence after the arrest of their co-conspirator, Gilberto Estevez. To be sure, the fact that Sanchez and Cubilla did abandon their known residence did make their apprehension by law enforcement officials more difficult once arrest warrants had been issued. The question remains,

---

1. Section 3C1.1 has been amended, effective November 1, 1990. *See* United States Sentencing Commission, *Guidelines Manual,* § 3C1.1 (Nov. 1990).

however, whether such conduct warrants an obstruction of justice enhancement.

The language of § 3C1.1 has recently been amended to make it applicable to conduct which occurred not only during an investigation and prosecution, but during sentencing as well. Except for this expansion of coverage, which is not applicable in the present case, the current language of § 3C1.1 mirrors that of the pre-amended version under which Sanchez and Cubilla were sentenced. Although the substance of § 3C1.1 was not significantly changed by the recent amendment, the accompanying commentary to that section was substantially revised. The commentary is provided by the Sentencing Commission in order to aid courts in the proper interpretation and application of the Guidelines. Application note 4 of the amended commentary contains "a non-exhaustive list of examples of the types of conduct that, absent a separate count of conviction for such conduct, do not warrant application of this enhancement...." *Guidelines Manual,* § 3C1.1, Comment. (n.4). One such example listed is, "avoiding or fleeing from arrest." *Id.* This describes the defendants' conduct in this case; the defendants undoubtedly abandoned their known residence in an attempt to avoid being arrested. We therefore conclude that the defendants' conduct in this case was insufficient to warrant the application of § 3C1.1. While we recognize that the district court did not have the benefit of the more refined interpretation of § 3C1.1 provided by the Sentencing Commission in the amended commentary, we nonetheless feel that proper application of the Guidelines on a consistent basis warrants a remand for resentencing.

■ Defendants next argue that the district court erred in imposing a two-level enhancement pursuant to § 2D1.1(b)(1) of the Guidelines for possession of a firearm during the commission of a drug offense.

During the search conducted of Apartment 619 of the Sugar Tree Apartments, a .357 revolver was found along with approximately 31 zip-loc bags, each containing a small amount of cocaine. This apart-ment was leased to Cubilla and evidence adduced at trial established that Sanchez also regularly occupied the apartment. In determining whether a specific enhancement provision is applicable, a sentencing court must consider "all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation of the offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense." *Guidelines Manual,* § 1B1.3(a)(1). The commentary to this section explains that, "[i]n the case of criminal activity undertaken in concert with others ... the conduct for which the defendant 'would be otherwise accountable' also includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant." *Guidelines Manual,* § 1B1.3, Comment. (n. 1). Therefore, for § 2D1.1(b)(1) to be applicable to both Sanchez and Cubilla, the government need only demonstrate that the firearm was "possessed" by a member of the conspiracy and that member's possession was reasonably foreseeable. *See Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946) (overt act of one partner in crime is attributable to all members of the conspiracy).

Section 2D1.1 of the Guidelines provides that a defendant's base offense level be enhanced by two levels where it is established that the defendant possessed a firearm during the commission of the offense. Application note 3 provides:

> [t]he enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.

In order for § 2D1.1(b)(1) to be applicable, the government must establish (1) that the defendant "possessed" the weapon, and (2) that such possession was during the commission of the offense. Although these are two separate inquiries, in most instances they collapse into a single factual determination because the weapon was present when the arrest took place or where the crime was committed. In these instances, once the government proves a defendant was in possession of a weapon, its burden is satisfied. *See United States v. Snyder,* 913 F.2d 300 (6th Cir.1990). Once it is established that a defendant was in possession of a weapon during the commission of an offense, a presumption arises that such possession was connected to the offense. *United States v. Moreno,* 899 F.2d 465 (6th Cir.1990). The government does not have to produce any further evidence establishing a *connection* between the weapon and the offense for § 2D1.1(b)(1) enhancement to be appropriate. *United States v. Restrepo,* 884 F.2d 1294 (9th Cir.1989). The defendant, however, may offer evidence to demonstrate that "it is clearly improbable that the weapon was connected to the offense," in which case the enhancement would not be applicable. *Guidelines Manual,* § 2D1.1(b)(1) (n. 3).

In this case, we must ascertain whether the district court's factual finding that Sanchez and Cubilla possessed the .357 magnum during the commission of the offense was clearly erroneous. The gun was found during the search conducted of the Apartment 619 of the Sugar Tree Apartments. This search also revealed a number of plastic bags each containing a small amount of cocaine. This provides ample evidence to support the district court's conclusion that a weapon was present during the commission of the offense.

We must next determine whether either Sanchez or Cubilla "possessed" the weapon for purposes of § 2D1.1(b)(1). Section 2D1.1(b)(1) covers situations where the defendant is in actual or construction possession of the weapon. *See Snyder,* 913 F.2d at 304; *United States v. Duncan,* 918 F.2d 647 (6th Cir.1990). Constructive possession

of an item is the "ownership, or dominion or control" over the item itself, "or dominion over the premises" where the item is located. *Snyder,* 913 F.2d at 304 (quoting *United States v. Cardenas,* 748 F.2d 1015, 1019 (5th Cir.1984)).

The sentencing court was presented with evidence which established that the apartment was leased to Cubilla and that he was, in fact, residing there when the weapon was found. This provides sufficient evidence to support a finding that Cubilla was in constructive possession of the weapon. Because Cubilla's possession of the .357 magnum was reasonably foreseeable, possession of the weapon is imputed to Sanchez. Thus, the two-level enhancement with respect to both defendants was proper.

■ Defendants next argue that the district court erred in applying a base offense level of 32 because there was insufficient evidence to establish that the drug conspiracy for which Sanchez and Cubilla were convicted involved 5 to 14.9 kilograms of cocaine. Defendants argue that the district court's finding that 5 to 14.9 kilograms of cocaine was involved in the drug conspiracy is erroneous because only one kilogram of cocaine was introduced into evidence at trial. This argument fails for two reasons. First, there was testimonial evidence introduced at trial that the conspiracy involved more than five kilograms of cocaine. Estevez testified that he alone had transported more than seven kilograms of cocaine at the request of Cubilla. The fact that this evidence was testimonial and not physical is irrelevant. Second, a sentencing judge is not limited to that information introduced into evidence at trial in making his sentencing decision. Indeed, a sentencing judge may consider relevant information which is prohibited from being introduced into evidence at trial in determining a defendant's sentence. *See* 18 U.S.C. § 3661. ("No limitation shall be placed on information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider

for the purpose of imposing an appropriate sentence.").

Finally, defendants argue that the district court erred in not finding that each was a minor participant in the overall drug conspiracy. Section 3B1.2 provides for a four-level decrease in a defendant's offense level upon a finding by the district court that his role was "minimal." *Guidelines Manual*, § 3B1.2. Defendants, however, have not cited any evidence in the record which would establish that either was "plainly among the least culpable of those involved in the conduct of a group." *Id.* at (n. 1). To the contrary, the evidence indicates that both Sanchez and Cubilla were fully apprised of and actively participated in all facets of the drug conspiracy.

We have considered Cubilla and Sanchez's remaining contentions and find that they are lacking merit.

Accordingly, we affirm the convictions as to both Cubilla and Sanchez and remand each to the district court for resentencing in conformity with this opinion.