16 F.3d 1223
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Robert TATE, Defendant-Appellant.
 No. 92-2515.
 United States Court of Appeals, Sixth Circuit.
 Feb. 22, 1994.
 
 Before: BOGGS and NORRIS, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-Appellant, Robert Tate, appeals his conviction in the United States District Court for the Eastern District of Michigan, Southern Division. Defendant was charged on May 21, 1990, as part of a twenty-count indictment against fourteen separate defendants, for crimes stemming out of a drug trafficking conspiracy. On January 8, 1991, defendant entered a guilty plea to conspiracy to possess with intent to distribute cocaine and to distribution of cocaine. On May 7, 1991, while the trial of the co-conspirators was in progress, defendant withdrew the guilty plea. On January 16, 1992, the grand jury issued a fourth superseding indictment, in which defendant was charged on four counts,[1] viz.; 1) violation of 21 U.S.C. Sec. 841(a)(1) and Sec. 846, Conspiracy to Possess With Intent To Distribute and To Distribute Controlled Substances (Count One of the Indictment); 2) violation of 21 U.S.C. Sec. 841(a)(1), Possession With Intent To Distribute Controlled Substances (Count Two of the Indictment); 3) violation of 21 U.S.C. Sec. 841(a)(1) and Sec. 846, Attempt To Possess With Intent To Distribute Controlled Substances (Count Five of the Indictment); and, 4) violation of 21 U.S.C. Sec. 843(b), Unlawful Use of a Communication Facility (Count Six of the Indictment). Defendant was tried by a jury, which found him guilty on all four of the counts. Defendant was sentenced to 240 months imprisonment on Counts 1, 2, and 5, and 48 months on count 6. All terms were to be served concurrently with an additional five years supervised release. Defendant filed a timely Notice of Appeal.
 
 I.
 
 2
 This case originated from an investigation, conducted by the Federal Bureau of Investigation (FBI) during late 1987, of a drug conspiracy ring. The primary target of the investigation was a Joseph Moss and the activities surrounding June's Car Wash, which was located in Detroit, Michigan. The FBI obtained telephone pen registers and wiretaps for Joseph Moss's residence and two telephones located at June's Car Wash. The information garnered through this investigation led to the issuance of a search warrant which was executed at the car wash on July 11, 1989. Agents discovered 32 kilograms of cocaine. Defendant was not present at the car wash at the time of the search.
 
 
 3
 In order to prove defendant's participation in the conspiracy, at trial the government introduced into evidence taped transcripts of the intercepted telephone calls. One of these calls specifically placed defendant at the car wash location. This call, however, involved the repair of an automobile and did not involve illegal drug use. It is important to note, nonetheless, that the call was placed by defendant, from the car wash, at the same time other telephone calls, which did involve the purchase and distribution of cocaine, were being made.
 
 
 4
 The evidence also disclosed a series of calls placed in which defendant, via his automobile telephone, arranged for the purchase of three kilograms of cocaine from a Mr. Bowie White. The deal was arranged through the use of a middle man, Roosevelt Lockett, who arranged the purchase from the car wash location.
 
 
 5
 In another series of telephone calls, Lockett again acted as a middle man for defendant, this time in a transaction for five kilograms supplied by an Aaron Brown. Again in early July, Lockett attempted to broker a transaction for defendant. It appears, however, that defendant had failed to pay the full amount which was owed.
 
 
 6
 On one last occasion, defendant arranged with Lockett to make another purchase, this time for twelve kilograms. Before defendant arrived to pick up the order, however, the FBI executed the search warrant and discovered 32 kilograms of cocaine.
 
 II.
 
 7
 Defendant, upon appeal, contends that the district court erred by failing to grant his Motion For Judgment of Acquittal. Specifically, defendant argues that the government failed to prove the conspiracy element of the offense. Defendant asserts that, although the government may have been able to demonstrate discussions and/or negotiations concerning drugs, this does not suffice to prove a conspiracy because it fails to show an actual agreement was reached and entered into with an illegal purpose. Finally, defendant maintains that, since the conspiracy charge must be reversed, so must the telephone charge (count six) and the possession charge (count two).
 
 
 8
 This court has recently addressed this issue of determining the existence of a conspiracy, holding as follows:
 
 
 9
 The standard of review used in determining the sufficiency of the evidence supporting a guilty verdict is "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Bourjaily, 781 F.2d 539, 544 (6th Cir.1986), aff'd, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987) (quoting Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). The essential elements of the crime of conspiracy are:
 
 
 10
 (1) that the conspiracy described in the indictment was willfully formed, and was existing at or about the time alleged; (2) that the accused willfully became a member of the conspiracy; (3) that one of the conspirators thereafter knowingly committed at least one of the overt acts charged in the indictment, at or about the time and place alleged; and (4) that such overt act was knowingly done in furtherance of some object or purpose of the conspiracy as charged.
 
 
 11
 United States v. Poulos, 895 F.2d 1113, 1117 (6th Cir.1990) (quoting United States v. Meyers, 646 F.2d 1142, 1143-44 (6th Cir.1981)). More specifically, to sustain a conviction under 21 U.S.C. Sec. 846, the government is required to prove the existence of an agreement to violate the drug laws and that each conspirator knew of, intended to join, and participated in the conspiracy. United States v. Sanchez, 928 F.2d 1450, 1457 (6th Cir.1991).
 
 
 12
 "The existence of a criminal conspiracy need not be proven by direct evidence, a common plan may be inferred from circumstantial evidence." Poulos, 895 F.2d at 1117. Circumstantial evidence standing alone can sustain the jury's verdict, and such circumstantial evidence need not remove every reasonable possibility except that of guilt. United States v. Townsend, 796 F.2d 158, 161 (6th Cir.1986) (citing United States v. Stone, 748 F.2d 361, 362 (6th Cir.1984)).
 
 
 13
 Moreover, once the existence of a conspiracy has been proven, only slight evidence is necessary to implicate a defendant. Poulos, 895 F.2d at 1117. Further, proof of a formal agreement among the conspirators is unnecessary; a tacit or mutual understanding among the parties is sufficient to show a conspiracy. Sanchez, 928 F.2d at 1457. In addition, "[e]very member of the conspiracy need not be an active participant in every phase of the conspiracy, so long as he is a party to the general conspiratorial agreement." Id. (quoting United States v. Christian, 786 F.2d 203, 211 (6th Cir.1986)).
 
 
 14
 United States v. Lee, 991 F.2d 343, 347-8 (6th Cir.1993).
 
 
 15
 In the case at bar, the evidence adduced at trial proved that defendant entered into negotiations to purchase large quantities of cocaine on several occasions. In addition, the evidence also clearly demonstrated that large quantities of cocaine were being purchased and resold, via the car wash locale, with Lockett serving as the middleman. Based upon this evidence, it was perfectly reasonable for a jury to infer that neither defendant nor Lockett would have continued to repeatedly negotiate over the price and quantities of cocaine if they had not consummated the previously negotiated transactions. Finally, although the negotiations were couched in street slang, the evidence, interpreted by expert witnesses at trial who explained the meaning of the conversations, provided an ample basis from which the jury could conclude that defendant had, in fact, agreed to the terms for the purchase of cocaine. Additionally, as further proof the deal was consummated, FBI agents secretly recorded Lockett telling defendant that the money which he provided for the purchase of cocaine was short.
 
 
 16
 Accordingly, there was sufficient evidence from which the jury could have found defendant a guilty and willing member of the conspiracy. This evidence also supports the convictions in count six for using the telephone in furtherance of the conspiracy and the charge of possession in count two. See Pinkerton v. United States, 328 U.S. 640 (1946).
 
 III.
 
 17
 Defendant also argues that there was insufficient evidence to support a guilty verdict with regard to count five, attempt to possess with intent to distribute cocaine. Specifically, defendant maintains there was no evidence he had unequivocal intent to purchase and resell cocaine. Finally, he asserts that he failed make the requisite "overt act" required to convict him of attempt.
 
 
 18
 The government bears the burden of proving that defendant intended to engage in criminal conduct and that he performed an overt act in furtherance of the proscribed act. United States v. Pennyman, 889 F.2d 104, 106 (6th Cir.1989). The degree to which a defendant's actions could be termed a substantial act in furtherance of the illegal activity is a factual issue to be resolved according to the particular circumstances of each case. United States v. Loehr, 966 F.2d 201, 203 (6th Cir.), cert. denied, 113 S.Ct. 655 (1992). Something less than a consummated sale is sufficient to prove attempt, as the government is under no obligation to wait until a sale is actually completed. Id.
 
 
 19
 In the case at bar, the evidence demonstrated that defendant spoke with Lockett on June 21, 1989, with the intent to purchase three kilograms of cocaine. This fact, coupled with the evidence discussed supra, including the large quantity of cocaine involved, provided the jury with a sufficient factual basis to infer defendant intended to purchase the cocaine for resale. Accordingly, this assignment of error is without merit.
 
 IV.
 
 20
 Defendant next contends the indictment was defective because it charged appellant with being involved in a single conspiracy whereas the evidence introduced at trial indicated defendant was a cog in a larger number of separate and distinct or multiple conspiracies. Defendant argues that the evidence against him merely showed he was involved in a conspiracy with Lockett, but that evidence introduced of conversations between Lockett and others was prejudicial to him. Therefore, defendant asserts that the government failed to meet its burden of proving the conspiracy elements as related to defendant.
 
 
 21
 Defendant, however, has misconstrued the burden of proof imposed on the government in prosecuting multiple conspiracies. This court held in Lee as follows:
 
 
 22
 If an indictment alleges one conspiracy, but the evidence can be construed as only supporting a finding of multiple conspiracies, a variance results. United States v. Warner, 690 F.2d 545, 548 (6th Cir.1982). However, even if a variance exists, it does not constitute reversible error "unless it prejudice[s] [the defendant's] substantial rights." United States v. Guerra-Marez, 928 F.2d 665, 671 (5th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 322, 116 L.Ed.2d 263 and --- U.S. ----, 112 S.Ct. 443, 116 L.Ed.2d 461 (1991) (quoting United States v. Richerson, 833 F.2d 1147, 1154-55 (5th Cir.1987)). Moreover, "[i]f the government proves multiple conspiracies and a defendant's involvement in at least one of them, then clearly there is no variance affecting defendant's substantial rights. Guerra-Marez, 928 F.2d at 672 (quoting United States v. L'Hoste, 609 F.2d 796, 801 (5th Cir.), cert. denied, 449 U.S. 833, 101 S.Ct. 104, 66 L.Ed.2d 39 (1980)).
 
 
 23
 United States v. Lee, 991 F.2d at 349. Furthermore, this court has also noted that conspiracies to distribute drugs, which normally involve numerous sales until they reach the ultimate consumers, are often chain conspiracies. Warner, 690 F.2d at 549.
 
 
 24
 In the case at bar, the evidence demonstrated that defendant was involved in a sophisticated chain conspiracy in which Lockett arranged for the purchase of cocaine and the subsequent sale to defendant for further resale. Any evidence introduced of other members of the conspiracy was proper to show the conspiracy. To the extent this evidence may have conflicted with the indictment, there was no prejudice suffered by the defendant from the divergence, if any. See Lee, 991 F.2d at 349.
 
 
 25
 Accordingly, this assignment of error is without merit.
 
 V.
 
 26
 Defendant contends the district court erred by awarding him a two level enhancement of his sentencing level for obstruction of justice. The basis of the court's conclusion was evidence that defendant told lies to Richard Kecskemeti, the probation officer who prepared defendant's presentence report. Mr. Kecskemeti testified that he interviewed defendant and asked him if he had ever used another name. Defendant stated that he had used the alias of Raphael Williams, but none other. Mr. Kecskemeti doubted defendant's story and ran an independent check on defendant's fingerprints. The fingerprint check revealed that defendant had been previously arrested under the name of Robert Johnson. Mr. Kecskemeti testified that had he not conducted this independent test, this fact would not have been discovered. In response to government questioning at the pre-sentencing hearing, defendant admitted he had been arrested under the name of Robert Johnson. On that basis, the district judge increased defendant's sentence under Sec. 3C1.1 of the United States Sentencing Guidelines.
 
 U.S.S.G. Sec. 3C1.1 provides as follows:
 
 27
 If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense levels by two points. (Emphasis added.)
 
 
 28
 Further, "[a]pplication Note 1(e) states that this upward adjustment may be made to a defendant's base offense level for 'furnishing material falsehoods to a probation officer in the course of a presentence or other investigation for the court.' " United States v. Saenz, 915 F.2d 1046, 1047 (6th Cir.1990) (quoting U.S.S.G. Sec. 3C1.1 comment. (n. 1(e) (1989)). This court will review a district court's imposition of this two level enhancement under a clearly erroneous standard of review. United States v. Alvarez, 927 F.2d 300, 303 (6th Cir.) cert. denied, 111 S.Ct. 2246 (1991).
 
 
 29
 In the case at bar, defendant argues that the falsehoods were not material because the probation department would have conducted the fingerprint check and discovered his prior convictions anyway. Defendant, however, has failed to provide any evidence supporting this assertion. Moreover, Mr. Kecskemeti testified that he does not routinely perform fingerprint checks in all cases.
 
 
 30
 Rather, the evidence clearly shows that defendant attempted to mislead the court in a material manner. Thus, it cannot be said the district court's enhancement was clearly erroneous.
 
 
 31
 This assignment of error is without merit.
 
 VI.
 
 32
 The Order of the district court is hereby AFFIRMED.
 
 
 
 [1]
 The Fourth Superseding Indictment listed seven named defendants and fifteen separate counts