**File Name: 06a0068n.06**
**Filed: January 25, 2006**

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

**Case No. 04-4515**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| | ) | OHIO |
| ALLAN L. SPATES, | ) | |
| | ) | **OPINION** |
| Defendant-Appellant. | ) | |

---

**BEFORE: GUY, SUTTON, and McKEAGUE, Circuit Judges.**

**McKEAGUE, Circuit Judge.** Defendant Allan Spates challenges the sentence he received for embezzling union funds and making a false statement. Specifically, he argues that the district court violated his Sixth Amendment right by enhancing his sentence under the United States Sentencing Guidelines ("U.S.S.G.").[1] He also claims that the district court violated the Supreme Court's dictates in *United States v. Booker* that the U.S.S.G. system is advisory, not mandatory. Finally, he argues that the district court violated a procedural rule we announced in *United States v. Bostic*. He asks that we vacate his sentence and remand to the district court for resentencing. For the reasons set forth below, we affirm his sentence.

---

[1] The district court applied the 2003 version of the United States Sentencing Commission's Guidelines Manual, and we do the same.

## I.  **BACKGROUND**

The facts of this case are not in dispute.  Spates was president of the Paper, Allied-Industrial, Chemical, and Energy Workers, Local 5-1250 union.  In 2001, Spates embezzled funds from the union.  He also purchased items for his personal use with a union credit card.  He did not disclose these purchases to the union, and subsequently filed false union financial reports.

On December 22, 2003, a federal grand jury returned a six-count indictment charging Spates with five counts of embezzlement, violating 29 U.S.C. § 501(c), and one count of making false statements, violating 18 U.S.C. §§ 1001, 1002.  The court set Spates's arraignment hearing for January 12, 2004.

A federal pretrial services officer personally delivered a notice of arraignment to Spates's residence in Cleveland Heights, Ohio.  Spates answered the door, but told the officer that he was not Allan Spates.  The officer gave the notice to Spates and informed him that "Allan Spates" was scheduled for an arraignment on January 12, 2004.

Spates did not attend his arraignment. As a result, the court issued an arrest warrant.  Before the warrant was executed, Spates left the state, moving his family to a home owned by his mother-in-law in Alabama.  A federal fugitive task force conducted an extensive search and posted information in the media.  Federal marshals subsequently located Spates and arrested him in Alabama on February 8, 2004.

Spates pleaded guilty to three counts of embezzlement and one count of making a false statement.  The probation office prepared a presentence report (the "PSR") for the

court. The office calculated a base offense level of 6 and specific offense level of 4. U.S.S.G. §§ 2B1.1(a), (b)(1)(C). The office recommended two 2-point upward adjustments, one for an abuse of a position of trust under U.S.S.G. § 3B1.3, and one for obstruction of justice under U.S.S.G. § 3C1.1. With a criminal history category of V and total offense level of 14, the office recommended a sentence range of 33-41 months.

Spates objected to the PSR on several grounds. He argued that giving a false name to the pretrial officer, missing his arraignment hearing, and moving out of the state did not rise to the level of obstruction of justice. He also argued that application of either of the two sentence enhancements would violate the Supreme Court's then-recent decision in *Blakely v. Washington*, 542 U.S. 296 (2004).[2]

The court addressed both objections during the sentencing hearing. On the obstruction of justice issue, the court rejected Spates's legal arguments and found the enhancement appropriate. On the *Blakely* issue, the court imposed an alternative sentence "in the event that the Sentencing Guidelines are declared unconstitutional." Based on the PSR calculations and the defendant's subsequent acceptance of responsibility, the court calculated a sentencing range between 27 to 33 months imprisonment. It sentenced Spates at the bottom of the range to 27 months imprisonment on each count to be served concurrently, three years supervised release, a $400 special

---

[2] Spates also objected to the criminal history assessment in the PSR. He does not take issue with the assessment on appeal, and we do not address it further.

assessment, and restitution of $20,655.21. The alternative sentence was identical to the primary sentence.[3]

Spates timely appealed his sentence.

## II. ANALYSIS

### A. Sentencing Enhancements Under U.S.S.G. §§ 3B1.3 and 3C1.1

The Sixth Amendment gives a criminal defendant the right to a "public trial, by an impartial jury." As a corollary, a defendant also has the right to require that a jury find beyond a reasonable doubt the existence of any fact essential to his punishment. *In re Winship*, 397 U.S. 358, 364 (1970).

In *United States v. Booker*, the Supreme Court held that the Sixth Amendment applies to a criminal defendant's sentence, meaning that the defendant has the right to have a jury find the existence of any sentence-enhancing fact (other than a prior conviction) that increases the punishment beyond the prescribed statutory maximum punishment. 125 S. Ct. 738, 756 (2005). While a defendant has the right to jury-found facts, he can waive that right as to certain facts by admitting them. *See id.*; *Blakely*, 542 U.S. at 303-04; *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

Spates argues that the enhancements for abuse of a position of trust and obstruction of justice violated his Sixth Amendment right to jury-found facts because: (a)

---

[3]

There is a minor difference between the amount of restitution ordered under the primary sentence ($20,655.21) and the amount ordered under the alternative sentence ($20,651.20). The former amount is identical to the amount of restitution recommended in the PSR. Spates has not raised this minor discrepancy as a ground for remanding his sentence, and we decline to do so here.

4

the indictment did not allege the applicability of such enhancements; and (b) Spates did not admit to either enhancement. Because Spates raised these objections below citing *Blakely* in support, we review the district court's sentence for harmless error. *Booker*, 125 S. Ct. at 769; *United States v. Hazelwood*, 398 F.3d 792, 801-02 (6th Cir. 2005).

Spates's first argument requires little discussion. In general, sentencing factors do not need to be listed in a criminal indictment. "An indictment must set forth each element of the crime that it charges. But it need not set forth factors relevant only to the sentencing of an offender found guilty of the charged crime." *Almendarez-Torres v. United States*, 523 U.S. 224, 228 (1998) (citation omitted); *see also United States v. Perez-Olalde*, 328 F.3d 222, 224 (6th Cir. 2003). There is nothing in the criminal statutes that Spates violated which requires the Government also to charge in an indictment facts to support sentencing factors. Moreover, Spates had ample notice of the Government's intent to seek the upward adjustments and had an opportunity to respond, as he did in his written and oral objections to the PSR.

As to his second argument, Spates need not admit to a particular sentencing factor for it to apply. In sentencing a defendant, a court can consider any facts found by a jury or admitted by the defendant. *Booker*, 125 S. Ct. at 756 ("Any *fact* . . . which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or to a jury verdict *must be admitted by the defendant* or proved to a jury beyond a reasonable doubt.") (emphasis added). A defendant can admit to facts in different ways, including pleading guilty to criminal charges or failing to object to asserted facts in a PSR. *United States v. Burgin*, 388 F.3d 177, 182 (6th Cir. 2004)

5

(explaining that the defendant admitted facts contained in the indictment when the defendant entered a guilty plea), *cert denied*, 125 S. Ct. 1692 (2005); *United States v. Stafford*, 258 F.3d 465, 475-76 (6th Cir. 2001) (finding that the defendant was deemed to have admitted facts contained in the PSR to which defendant failed to object). If the admitted facts are sufficient to support a sentencing factor, a district court can apply that factor in fashioning a defendant's sentence.

Spates does not dispute that he admitted below to legally-sufficient facts for the abuse of a position of trust enhancement. *See* Appellant Brief at 8 n.4. A review of the record shows that ample factual support exists for the enhancement. The district court did not err by enhancing his sentence under U.S.S.G. § 3B1.3.

As to the obstruction of justice factor, Spates argues that the facts to which he admitted are legally insufficient to find he willfully obstructed justice. Where, as here, there are no factual disputes, but only the legal one of whether the undisputed facts are sufficient to establish the obstruction of justice enhancement, we review the enhancement *de novo*. *United States v. Roberts*, 243 F.3d 235, 237 (6th Cir. 2001).

Under U.S.S.G. § 3C1.1, a district court can enhance a defendant's base offense level by 2 levels "[i]f (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct . . . ." In its commentary, the guidelines manual provides a non-exhaustive list of the types of conduct to which the adjustment applies. One of the examples it gives is where a

6

defendant willfully fails "to appear, as ordered, for a judicial proceeding." U.S.S.G. § 3C1.1 cmt. n.4(e). Spates asserts that the notice of arraignment delivered to his residence was not a "traditional court order" and thus his failure to appear for the arraignment was not a willful obstruction of justice.

Spates's argument misses the point. As noted above, the commentary does not describe every type of conduct constituting obstruction of justice. Conduct which does not squarely fall into one of the listed examples can still give rise to a valid obstruction of justice enhancement.

Under the circumstances here, we find that Spates's actions legally constitute obstruction of justice. Spates knew that he had committed a crime by embezzling funds from the union.[4] After the grand jury handed down its indictment, the court scheduled Spates for arraignment. A pretrial services officer informed him of the arraignment and tried to interview him, but he lied to her, telling her that he was not Allan Spates. Spates clearly had knowledge that criminal charges were pending against him, but rather than cooperate with authorities, he misled them.

Spates's criminal history further shows that he was no stranger to the criminal system. Although his prior convictions were in state court, Spates was well aware that he could be held over after arraignment in federal court. The fear of incarceration was one of the reasons he gave for skipping the arraignment. His failure to attend his arraignment

---

[4]

In fact, the Government asserted during the sentencing hearing that Spates's predecessor as local president had also been prosecuted for embezzling funds, and that Spates was aware of this when he took over as president. Defense counsel did not object to the Government's factual assertion.

was not simply an innocent mistake, but rather the intentional, knowing interference with the disposition of criminal charges. *United States v. Teta*, 918 F.2d 1329, 1333-34 (7th Cir. 1990); *see also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990) ("[Defendant] was no stranger to the criminal justice system, and he can doubtless be presumed to have known that he was not free to decamp after his conviction. It is enough, in any event, that he disobeyed an instruction to report to the probation officer.").

Moreover, Spates did more than intentionally lie to authorities and skip his arraignment – he moved his entire family from Ohio to Alabama. He did so several weeks after he received notice of his arraignment. There is nothing in the record to suggest he tried to contact the court or pretrial services before or after his scheduled arraignment. In fact, the authorities engaged in an extensive search for him, finally finding and arresting him in Alabama. Thus, his actions evidence a deliberate, calculated plan by an indicted defendant desiring to avoid criminal prosecution and possible conviction, and not the spontaneous instincts of a fleeing suspect. *Compare United States v. Porter*, 145 F.3d 897, 902-04 (7th Cir. 1998) (affirming obstruction of justice enhancement where defendant sold his vehicles, moved out of state, and created an alias to evade impending grand jury indictment), *with United States v. Draves*, 103 F.3d 1328, 1338 (7th Cir. 1997) (holding that defendant did not obstruct justice by fleeing from arrest because he did so spontaneously and without deliberation); *see also United States*

*v. Hill*, 79 F.3d 1477, 1486 (6th Cir. 1996) (affirming obstruction of justice enhancement where defendant missed a court appearance and tried to hide from arresting officers).[5]

For these reasons, we conclude that the district court had sufficient, undisputed facts for it to enhance Spates's sentence under U.S.S.G. § 3C1.1. While any one of Spates's acts – in isolation – might not have been sufficient, when considered cumulatively, his actions certainly establish a willful obstruction of, or attempt to obstruct, the administration of justice. *United States v. Walcott*, 61 F.3d 635, 639 (8th Cir. 1995) ("While individual components of [defendant's] conduct alone may not constitute obstruction of justice, when viewed cumulatively, we conclude the totality of [his] conduct warranted an enhancement under section 3C1.1."). Accordingly, Spates's sentence did not violate the Sixth Amendment as a result of the enhancement.

**B.    The District Court's Alternative Sentence**

While the district court did not err in enhancing Spates's sentence, it did err by treating the U.S.S.G. as mandatory, rather than advisory. *United States v. Webb*, 403 F.3d

---

[5] The present case is distinguishable from cases like *United States v. Alpert*, 28 F.3d 1104 (11th Cir. 1994), and *United States v. Sanchez*, 928 F.2d 1450 (6th Cir. 1991), where obstruction of justice enhancements were not warranted. In both of those cases, the defendant fled after learning of a criminal investigation or arrest of a co-conspirator. In neither case was the defendant under arrest or subject to charges, nor had any arraignment hearing been scheduled. *Alpert*, 28 F.3d at 1107; *Sanchez*, 928 F.2d at 1459. In contrast, this is not an instance in which a criminal investigation is underway, but no charges have been filed. Here, Spates did not move out of the state until *after* being indicted and receiving notice of the indictment. Thus, the Government had already formally initiated criminal charges against him, and these charges could not proceed until Spates was arrested and returned to the district. *See Teta*, 918 F.2d at 1335 ("When the disposition of the charges cannot proceed until the defendant's presence is secured, and when he must be brought to court under arrest, as transpired in this case, there is obstruction of justice.").

373, 382 (6th Cir. 2005), *cert. denied*, 2006 U.S. LEXIS 505 (Jan. 9, 2006); *United States v. Barnett*, 398 F.3d 516, 527-28 (6th Cir.), *cert. dismissed*, 126 S. Ct. 33 (2005). The district court did not have the benefit of the Supreme Court's decision in *Booker* at the time of sentencing. In trying to anticipate the Supreme Court's ruling in that case, the district court prudently issued an alternative sentence, but it did so in light of the possibility that the Supreme Court would find the U.S.S.G. "unconstitutional," not advisory. As such, the district court still erred under *Booker*. *United States v. Christopher*, 415 F.3d 590, 593 (6th Cir. 2005).

Yet, we find the error harmless.[6] "[W]hen a district court imposes alternative, identical sentences, one under a regime in which [U.S.S.G.] enhancements are not mandatory, the harmlessness of any *Booker* error is established." *Christopher*, 415 F.3d at 593 (citing *United States v. Strbac*, 129 F. App'x 235, 237 (6th Cir. 2005), and collecting cases). Under the district court's anticipation of the *Booker* decision, an "unconstitutional" U.S.S.G. regime certainly meets the requirement that the U.S.S.G. not be mandatory. As we explained in *Christopher*, "the district court would have *more* discretion to depart downward in the absence of the [U.S.S.G.] than it would in the context of an advisory [U.S.S.G.] system; the refusal to give a lower sentence in the one precludes any fair inference that it would give a lower sentence in the other." *Id.* at 594 (emphasis in original). As the district court clearly issued an identical, alternative sentence under a non-mandatory sentencing guideline scheme, its error was harmless.

---

[6] Because Spates raised objections to his sentence based in part on *Blakely*, we also review this claim under the harmless error standard. *Christopher*, 415 F.3d at 593.

Although the court did not expressly consider non-guideline sentencing factors, such as those found in 18 U.S.C. §§ 3553(a), 3582(a), and 3661, we further find that the district court imposed a reasonable sentence. *See id.* (reviewing sentence for reasonableness under *Booker* when harmless error found). Spates received a prison term at the bottom of the U.S.S.G. range. *See Webb*, 403 F.3d at 386 (Kennedy, J., concurring in part and dissenting in part) (questioning "whether a sentence within the [U.S.S.G.] range can ever be anything other than reasonable."). Spates could have addressed the sentencing factors with the district court during the hearing, but chose not to do so. He has not made any proffer on appeal as to what factors the district court should have considered under these statutes, or explained how these factors would have affected the alternative sentence he received. Accordingly, we find no cause for remand under *Booker*. *See Christopher*, 415 F.3d at 594 (affirming sentence as reasonable even though district court did not explicitly consider sentencing factors listed in 18 U.S.C. § 3553(a)).

**C.     Opportunity to Object to the Alternative Sentence**

As his final argument on appeal, Spates asserts that the district court violated a procedural rule by failing to ask whether either party had any objections after it handed down its alternative sentence. After announcing its primary sentence, the court stated that it had two final matters. First, it asked whether there were any further objections from either party, and both declined. It then imposed the alternative sentence. The court did not again ask the parties whether they had any objections before adjourning the hearing. Under the procedural rule set forth in *United States v. Bostic*, district courts,

11

"after pronouncing the defendant's sentence but before adjourning the sentencing hearing," must "ask the parties whether they have any objections to the sentence just pronounced that have not previously been raised." 371 F.3d 865, 872 (6th Cir. 2004). Failure to follow the rule will permit a party to raise an objection on appeal without first demonstrating plain error. *Id.*

We have not yet addressed whether the procedural rule announced in *Bostic* applies to alternative sentences. Given that the district court did, in fact, err in issuing its alternative sentence (albeit harmlessly), arguably one of the policies underlying the rule – "permitting the district court to correct on the spot any error it may have made" – might have been furthered had the district court asked for any objections after issuing that sentence. *Id.* at 873 (quoting *United States v. Jones*, 899 F.2d 1097, 1102 (11th Cir. 1990), *overruled on other grounds by United States v. Morrill*, 984 F.2d 1136 (11th Cir. 1993)).

We decline to answer the open question because even if we apply the rule here, remand to the district court is not justified. Spates states that had the district court given him an opportunity to object to the alternative sentence, he would have been able to address the statutory factors governing sentencing concerns. Again, though, he offers no specific arguments he would have made had the district court asked for objections after announcing its alternative sentence. He could have addressed the factors with respect to the primary sentence, which was identical to the alternative sentence, but declined to do so. For the same reasons we find his sentence reasonable, *supra* § II.B, we conclude that remand is not warranted on his final claim.

12

### III.  <u>CONCLUSION</u>

For the reasons stated above, we AFFIRM the district court's sentence.